UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>GREGORY T. ROGGENTHEN,<br>GTR FARM & RANCH, LLC,<br>OPEN RANGE FARMS, INC., and<br>TIMBER CREEK LAND & CATTLE,<br>LLC,<br><br>    Defendants. | CIV. ~~18:~~ 19-1018<br><br><br>**COMPLAINT** |

The United States of America, by and through its undersigned attorneys, United States Attorney Ronald A. Parsons, Jr., and Assistant United States Attorney Cheryl Schrempp DuPris, brings this action to foreclose the interests in security, to obtain a judgment with respect to encumbered security transferred and sold without proper authorization, and to recovery monetary judgment against the three related Defendants.

Plaintiff hereby alleges as follows:

### Jurisdiction & Venue

1.     This Court has jurisdiction under 28 U.S.C. § 1345 because the United States of America is the Plaintiff through its agency, the United States Department of Agriculture (USDA), Farm Service Agency ("FSA").

2.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants reside within and/or are doing or previously did business within this District.

## Parties

3.     Defendant, Gregory Tyler Roggenthen (Roggenthen), resides at 39904 176th Street, Frankfort, Spink County, South Dakota, and is one of the owners of the property which is subject to this action.

4.     Defendant, GTR Farm & Ranch, LLC, is a South Dakota Limited Liability Company (LLC), effective December 16, 2013, whose owner and registered agent is Gregory Tyler Roggenthen, 39904 176th Street, Frankfort, South Dakota, and is the owner of property which is subject to this action.

5.     Defendant, Open Range Farms, Inc., is a South Dakota Corporation, effective January 16, 2018, whose owner and registered agent is Gregory Tyler Roggenthen, 39904 176th Street, Frankfort, South Dakota, and is joined because it sold crops, which are encumbered to the plaintiff.

6.     Defendant, Timber Creek Land and Cattle, LLC, is a South Dakota LLC, whose registered agent is Paul J. Gillette, Redfield, South Dakota, which has a principal place of business in Frankfort, Spink County, South Dakota, and is joined because it owns the real property where a grain bin (collateral) was constructed.   Any interests in the grain bin is inferior to the interest of Plaintiff.

## Background

7.     Starting in 2015, USDA programs made loans to GTR Farm & Ranch, LLC, some of which were co-signed by its principal, Roggenthen, individually.   The loans are secured, in part, by all crops, farm products, equipment, vehicles, a grain storage bin, proceeds, and inventory (chattels).

2

The loans are in default and Borrowers are indebted to Plaintiff as set forth in paragraphs 9 through 19 below.

8.    In 2018, Roggenthen formed a new subsidiary corporation, Open Range Farms, Inc., then sold farm products that Plaintiff has a perfected first lien position in, without agency consent and without honoring the liens. Roggenthen has engaged in a legal fiction by placing property in the hands of this third entity while actually retaining control and all the benefits of ownership. This transfer of property, as described in paragraph 20 below, was in violation of 28 U.S.C. § 3304(b).

### Secured Debt

9.    In 2015, FSA made a term operating loan to GTR Farm & Ranch, LLC for the purpose of purchasing farm equipment.   In addition, there was an annual operating loan made for 2015 expenses.   Roggenthen signed the notes as manager and individually (collectively referred to as "Borrowers").   After payment of the 2015 annual operating loan, Borrowers made a 2016 annual operating loan.   In 2015, Borrowers also made a 7-year Farm Storage Facility loan to construct a 55,000 bushel grain bin.   Relevant to this action, on or about the dates indicated below, for value received, Borrowers made, executed, and delivered to Plaintiff the following promissory notes:

| EXHIBIT | PRINICIPAL OF ORIGINAL NOTE | DATE OF ORIGINAL NOTE | RATE OF INTEREST | LOAN NUMBER |
|---------|-----------------------------|----------------------|------------------|-------------|
| 1 | $155,000.00 | 04/06/2015 | 2.375 | 44-02 |
| 2 | $170,000.00 | 03/25/2016 | 2.375 | 44-04 |
| 3 | $80,000.00 | 11/30/2015 | 2.000 | 2015/00016 |

A true and correct copy of said promissory notes are attached hereto as Exhibits 1 through 3.

10.·   As security for the notes, Borrowers made, executed, and delivered to Plaintiff security agreements describing security for the loans, including all crops and farm products grown on described real estate, farm program payments, crop indemnity payments, any proceeds derived from the transfer by the Debtor to any subsequent party, and other equipment generally described as follows:

| EXHIBIT NUMBER | DATE OF SECURITY AGREEMENT | PERSONS/ENTITY PLEDGING COLLATERAL | GENERAL DESCRIPTION OF COLLATERAL PLEDGED |
|---|---|---|---|
| 3 and 3-1 | 11/30/2015 and 11-16-15 | Gregory Roggenthen as Manager of GTR Farm & Ranch; Gregory Roggenthen Individually | • GSI 55,000 bu grain bin<br>• 2 Fans<br>• Motor & motor parts<br>• 8" Auger<br>• Winding stairway<br>• All related equipment |
| 4 | 04/06/2015 | Gregory Roggenthen as Manager of GTR Farm & Ranch | • Case IH 900 planter<br>• Case IH 7130 Tractor<br>• Gleaner Corn Head-TBP*<br>• Sprayer-TBP*<br>• Gleaner Combine-TBP*<br>• Ford F550 Pickup<br>• Semi-Truck-TBP*<br>• Grain Trailer-TBP*<br>• 1966 Volvo car |
| 5 | 03/25/2016 | Gregory Roggenthen As Manager of GTR Farm & Ranch, LLC; Gregory Roggenthen Individually | • Case IH 900 12 R Planter<br>• Case IH 7130 Tractor<br>• Gleaner R62 Combine<br>• 30' Corn Head<br>• 20' Bean Head<br>• Melroe Sprayer<br>• 2 1500-Gal Fertilizer Storage Tanks |

| | | | |
|---|---|---|---|
| 5 (Cont.) | 03/25/2016 | Gregory Roggenthen As Manager of GTR Farm & Ranch, LLC; Gregory Roggenthen Individually | • Twin Star 2030 V Rake<br>• Mf1105 Tractor/loader<br>• Combine Monitor<br>• NH 7090 Baler<br>• Westfield Auger<br>• Fertilizer System<br>• 2000 Ford F550 Pickup<br>• 42' Wilson Hopper bottom w/tarps<br>• 1991 Freightliner Semi<br>• ~~2005 Ford F250 Pickup~~+<br>• 1966 Volvo Car<br>• Sandrail |

*TBP – To Be Purchased     +Reported as sold 7/26/18 with proceeds to prior lien, so released.

A true and correct copy of the security agreements are attached as Exhibits 3, 3-1, 4, & 5

11.   At the time of the note, Borrowers intended, expressly or impliedly, that certain chattels would serve as security for the note, and described, with reasonable certainty, the security interest to which Borrowers' obligation fastened, including but not limited to crops, farm products, entitlements, and proceeds.   The security interests were perfected by filing the required documents with the South Dakota Secretary of State.   A true and correct copy of the UCC filing is attached as Exhibit 6.

12.   Plaintiff has been and now is the owner and holder of the notes and security agreements.

13.   Upon information and belief, Borrowers farm approximately 531 acres, growing corn, soybeans and some hay.   Borrowers have not reported sales of grain since October 2017.   Borrowers have not accounted for any proceeds derived from 2018 and 2019 crops or reported any indemnity payments

arising from said crops.   Based upon certified acres, Borrowers' crops for 2016, 2017, and 2018 are not accounted for, and 2019 crops would be harvested soon.

14.   On June 16, 2017, Roggenthen brought FSA two checks, one for a crop sale.   The other was a crop insurance check.   FSA released the checks so he could deposit the funds in his bank account.   Roggenthen wrote FSA a check for the total amount of both checks, $25,264.58, to be applied to the notes.   The check Roggenthen wrote to FSA was returned due to insufficient funds. Although FSA contacted Roggenthen, on more than one occasion, he did not make good on the check. He has not accounted for the proceeds that should have been deposited in his bank account to cover his check.

15.   The last voluntary payment on loan 44-02 was on November 2, 2015, for $24,300.   The last payment on loan 44-04 was $4,813.15 made on October 2, 2017, for reported soybean sales.

16.   Borrowers are in default of the terms of the notes and security agreements because they failed to make timely payments of principal and interest when due. The notes provide that upon default, Plaintiff may accelerate the debt. Exhibits 1 and 2 at ¶ 21.

17.   Plaintiff notified Borrowers that the debt had been accelerated on or about February 28, 2018.   A true and correct copy of the acceleration notice is attached hereto as Exhibit 7.

18.   Because of Borrowers' default, Plaintiff has accelerated the note; declared all of the debt evidenced thereby immediately due and payable; and is entitled to a judgment against Borrowers in the amounts due.

19.    As of July 26, 2019, the amounts due and owing upon the notes are as follows:

| | |
|---|---:|
| Loan 44-02 Principal: | $132,361.09 |
| Accrued Interest as of 07/26/19 | <u>11,661.77</u> |
| Total Amount Due: | $144,022.86 |
| Daily Interest Accrual: $8.6125 | |
| | |
| Loan 44-04 Principal: | $133,435.41 |
| Accrued Interest as of 07/26/19 | <u>5,747.78</u> |
| Total Amount Due: | $139,183.19 |
| Daily Interest Accrual: $8.6824 | |
| | |
| Loan 44-98 Advance for Lien Search | $10.22 |
| Loan 44-99 Advance for title opinion | <u>$163.65</u> |
| **TOTAL FSA-FLP** | **$283,379.92** |
| | |
| FSFL Loan 2015/00016 Principal | $69,024.25 |
| Accrued Interest as of 07/26/19 | <u>3,391.00</u> |
| Total Amount Due: | $72,415.25 |
| | |
| **TOTAL FSA DEBT-FLP AND FSFL** | **$355,795.17** |

A Certificate of Indebtedness for the FLP debt is attached as Exhibit 8. Interest continues to accrue on the principal amount of this debt at the rate of $17.3060 per day.   A Certificate of Indebtedness for the FSFL debt, is attached as Exhibit 9.   Interest continues to accrue on the principal at the rate of $3.7821 per day.

### Fraudulent Transfers

20.    Upon information and belief, Roggenthen transferred, assigned, removed, or converted 2017 crops, which were pledged to FSA pursuant to agreements described in paragraph 10, to Open Range Farms, Inc., and then sold said security under the name of the new entity, without FSA's consent, without reporting the sales, and without honoring the agency's liens.   Examples

7

of these unauthorized sales of pledged crops include, but are not limited to the following:

| DATE | Transferred & Sold To | PROCEEDS |
|---|---|---|
| 10/07/2017 | Riverview, LLP | $ 1,846.60 |
| 10/19/2017 | Riverview, LLP | 27,438.38 |
| 11/28/1017 | Mike Jessen | 6,250.00 |
| 11/29/2017 | David Jessen | 6,250.00 |
| 01/29/2018 | SD Wheat Growers | 4,018.90 |
| 02/08/2018 | SD Wheat Growers | 4,013.97 |
| 02/21/2018 | SD Wheat Growers | 2,798.25 |
| 02/28/2018 | Agtera (fdba SD Wheat Growers) | 8,337.85 |
| 03/01/2018 | Agtera | 12,486.94 |
| 04/06/2018 | Agtera | 13,462.05 |
| 04/07/2018 | Agtera | 44,020.49 |
| 05/14/2018 | Agtera | 5,782.79 |
| TOTAL | | $136,706.22 |

## Piercing The Corporate Veil/Alter Ego

21.   Defendant, Open Range Farms, Inc., is a closely related company, owned and managed solely by Roggenthen, who also solely owns and manages GTR Farm & Ranch, LLC.   There is no practical distinction between the two. The companies operate at the same location.   One person, Roggenthen, exercises control over the operations of both entities.   No other officers or directors have direct control.

22.   Roggenthen, individually and as manager of GTR Farm & Ranch, Inc., signed FSA loans secured with 2016 and future crops.   He then transferred encumbered 2017 grain in his possession, with inadequate or no consideration, to Open Range Farms, Inc., or merely sold the crops under the name of Open Range Farms, Inc., then remained in control of the proceeds and continued to

enjoy the benefits (proceeds from transferred grain) to continue farming in 2018 and 2019, on the same real estate farmed by GTR Farm & Ranch, Inc.

23.   Open Range Farms, Inc., has no business except that of Roggenthen or GTR Farm & Ranch, LLC, his solely owned LLC, and no assets except those transferred to it by Roggenthen.   Except for the unauthorized transfer and sale of FSA's security, i.e. 2017 and 2018 farm products, Open Range Farms, Inc., has grossly inadequate capital.

24.   Roggenthen engaged in a legal fiction by transferring encumbered grain to Open Range Farms, Inc., while retaining all the benefits of ownership, and used the entity as his own bank account.   The transfers were, in reality, to himself.

25.   Open Range Farms, Inc., used the property of GTR Farm and Ranch, LLC, and the proceeds therefrom, as its own, at the direction of Roggenthen, the sole owner of both entities, and did not act independently in its own interests but took orders from the owner and manager of the parent entity in the latter's interests.

26.   By selling the pledged grain and receiving payments under the name of a new entity, Open Range Farms, Inc., instead of honoring FSA's liens, Roggenthen, and every participating entity, unlawfully profited, and/or received proceeds for encumbered collateral to which it was not entitled.

27.   There is such unity of interest and ownership that the separate entities are indistinct or non-existent and adherence to the fiction of separate corporate existence sanctions fraud, promotes injustice or inequitable

9

consequences and leads to an evasion of borrowers' legal obligation to pay their debts.

## COUNT I- FRAUDULENT TRANSFERS

28.    As set forth in paragraph 14 above, on or about June 16, 2017, Roggenthen converted and never accounted for collateral proceeds totaling $25,264.58, after FSA released checks to be deposited in his account. In exchange, Roggenthen provided FSA with his personal check, which was returned due to insufficient funds. Roggentehn's actions were undertaken in an effort to avoid paying a debt owed the Plaintiff.

29.    As set forth in paragraph 20 above, starting in October 2017 through at least May 2018, Roggenthen, the sole owner and manager of GTR Farm & Ranch, LLC, retained possession and control and transferred encumbered grain, without receiving reasonable equivalent value that could be reached by FSA, to an insider, namely Open Range Farms, Inc., in order to sell the secured chattels and avoid paying a debt to the United States.

30.    The acts of failing to account for and converting collateral proceeds, and forming a new entity to conceal and sell mortgaged crops without reporting sales to FSA or making payments on the notes, demonstrate an intent to hinder, delay and defraud the United States by assigning, disposing, removing, concealing, and converting property that would otherwise be available to satisfy the debt owed to the United States.

31.    Roggenthen, manager and owner of GTR Farm & Ranch, LLC, knew or should have known about the outstanding debt to the United States as

described in this Complaint, that he was engaging in activity for which the remaining encumbered chattels would not satisfy the obligation, that the debt owed to Plaintiff was beyond his ability to pay as it came due, and that the total debt was greater than all of Borrowers' assets or that he and GTR Farm & Ranch, LLC was rendered insolvent by the transfers.

32.    Roggenthen has yet to satisfy the debt. His transfer and sale of encumbered collateral, impaired Plaintiff's ability to collect the debt because it had been deprived of access to the collateral and the proceeds from the sale of the encumbered grain. Accordingly, Plaintiff seeks a declaratory judgement that the transfers were fraudulent, such that the transfers should be set aside and voided to the extent necessary to satisfy the debt to the Plaintiff.

### COUNT II- UNJUST ENRICHMENT

33.    By virtue of the foregoing, Roggenthen, and his alter ego, Open Range Farms, Inc., have been unjustly enriched from the scheme to sell encumbered chattels to the detriment of the United States, which, in good conscience, they should not be allowed to retain. Accordingly, the United States seeks a judgment, joint and several against every participating entity,[1] including

---

[1] Upon showing a transfer was fraudulent, the United States may avoid the transfer to the extent necessary to satisfy the debt to the United States, and may obtain a remedy "against the asset transferred or other property of the transferee," or "any other relief the circumstances may require." 28 U.S.C. § 3306(a). The United States "may recover judgment for the value of the asset transferred, but not to exceed the judgment on a debt." Id. § 3307(b). This judgment may be entered against "(1) the first transferee of the asset or the person for whose benefit the transfer was made; or (2) any subsequent transferee, other than a good faith transferee who took for value or any subsequent transferee of such good-faith transferee." Id.

Roggenthen, individually and as manager and owner of GTR Farm and Ranch, LLC, and Open Range Farms, Inc., and the entities themselves, in the amount shown in paragraph 19 or proved at trial, plus interest.

34.    In addition, because FSA's lien could be traced to particular property or proceeds in the three related Defendants' possession, Plaintiff requests an equitable lien in all their 2018 and 2019 crops and proceeds, and all future crops and proceeds until the debt is paid in full.[2]

## COUNT III- FORECLOSURE OF THE PERSONAL PROPERTY

35.    The notes and security agreements described herein provide that in case of default the holder may foreclose.   There has been a failure to pay the notes and interest thereon, as provided by the terms of the notes and security agreements.    Plaintiff has elected to exercise its right to enforce payment of the entire debt, as provided by the notes, and to enforce payment of the notes, and to foreclose the security interest given to secure the same.

---

[2] The Bankruptcy code exempts from discharge "any debt for money, property, [or] services . . . to the extent obtained by . . .  false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A).   "Actual fraud" encompasses fraudulent transfer schemes effectuated without any false representation to the creditor.   *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 194 L. Ed. 2d 655 (2016).   Where the government has brought suit to stop fraud and to fix damages for the commission of fraud, the action, in its entirety, is exempt from the automatic stay and shall proceed to trial, despite a defendant's bankruptcy filing, so that the Government's claim may be liquidated.   *In re Mickman*, 144 B.R. 259, 261 (E.D. Pa. 1992).   Moreover, when issues of fraud are litigated in prior proceedings, collateral estoppel bars re-litigation in the bankruptcy court.   *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981).

36.    No other action at law or proceeding in equity or otherwise has been commenced or is now pending for foreclosure or judgment upon these notes.

37.    Plaintiff is entitled to all proper costs incurred, or to be incurred by Plaintiff, from the time this Complaint is filed to the conclusion of this action.

38.    Timber Creek Land & Cattle, LLC, owns the real property where the 55,000 bushel grain bin was constructed and has agreed that the grain bin remained severed from the real property and that upon default FSA may a) take possession of and remove the bin, without notice or liability for any diminution in value to the property, and b) enforce its security interest against said personally.   Exhibit 3.   No judgment is sought against this Defendant.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1.    Judgment be entered against GTR Farm & Ranch, LLC, Roggenthen, and Open Range Farms, Inc., joint and severally, in the amount of $355,795.17 as of July 26, 2019, together with any additional sums advanced, costs or expenses expended herein, and interest accruing thereon.

2.    A Decree of Sale be entered directing the United States Marshal or his deputy to sell the chattel property as provided by law, without the right of redemption, and to apply the proceeds as follows: (a) to the costs and expenses of sale; (b) to the payment of the costs and disbursements taxed in the action in which the sale is made; (c) to payment on the debt adjudged by the Court to be

13

due; (d) to pay the surplus, if any, into court for the use of the Borrower or the person entitled thereto, subject to the order of the Court.

3.   The security interest of the Plaintiff in the above described chattel property be foreclosed and that the Borrowers be adjudged to have no further right, title, or interest in said chattel property.

4.   The Borrowers or those individuals in possession of Borrowers' chattel be directed to peacefully assemble and deliver to the United States Marshal the herein described chattel property.

5.   The United States Marshal be directed to take possession of said chattel property and, after advertising for sale according to law, to sell the chattel property in the manner provided for by law, and to apply the proceeds to the costs and expenses of sale, Plaintiff's costs and expenses of this action, and the indebtedness due to Plaintiff.

6.   The Court determine the lien priority of the parties and interests of the parties and order the Marshal to distribute the proceeds accordingly.

7.   All Defendants, together with each and every person or entity claiming under them or claiming any lien or encumbrance of any kind or character upon or against said chattel property subsequent in time or in priority, or both, to the liens of the Plaintiff's security agreements, and all persons claiming to acquire any right, title, or interest in and to said chattel property or any part thereof subsequent to the filing of said security agreements be barred and foreclosed of and from all rights, title, or interest in and to said property.

8.  Plaintiff be awarded or otherwise reimbursed for the costs and disbursements of this action.

9.  To the extent the net proceeds from the sale of the collateral are less than the amount of the debt owed to Plaintiff, Plaintiff requests a deficiency judgment against the Borrowers, jointly and severally, for any sums which remain unsatisfied after the sale of the collateral.

10.  Plaintiff be awarded or otherwise reimbursed for the costs, attorney's fees, and disbursements of this action.

11.  Any other relief the Court deems to be just and equitable.

Dated this ___6th___ day of August, 2019.

RONALD A. PARSONS, JR.
United States Attorney

Cheryl Schrempp DuPris
Assistant United States Attorney
P.O. Box 7240
Pierre, SD 57501
(605) 945-4553
Fax: 605.224.8305
Cheryl.Dupris@usdoj.gov

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

CV 19-1018

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Cheryl Schrempp DuPris
United States Attorney's Office
P.O. Box 7240

## DEFENDANTS

Gregory T. Roggenthen, GTR Farm & Ranch, LLC,  Open Range Farms, Inc., and Timber Creek Land & Cattle, LLC,

County of Residence of First Listed Defendant   SPINK
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1   U.S. Government Plaintiff | ☐ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1345; 28 U.S.C. § 1391

Brief description of cause:
Foreclose the interests in security; obtain judgment re: transferred/sold property; monetary judgment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
355,795.17

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____     DOCKET NUMBER _____

DATE
8-6-2019

SIGNATURE OF ATTORNEY OF RECORD
*Cheryl Schrempp DuPris*

**FOR OFFICE USE ONLY**

RECEIPT # _____     AMOUNT _____     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Form Approved - OMB No. 0560-0237

This form is available electronically.

(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2026<br>(12-05-12) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name<br>GTR Farm & Ranch LLC | 2. State<br>SOUTH DAKOTA | 3. County<br>SPINK |
|---|---|---|
| 4. Case Number | 5. Fund Code<br>44 | 6. Loan Number<br>02 | 7. Date<br>04/06/2015 |

| 8. TYPE OF ASSISTANCE<br>OL-BP-REG-7YR | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☒ Initial loan   ☐ Conservation easement   ☐ Deferred payments

☐ Consolidation   ☐ Rescheduling   ☐ Debt write down

☐ Subsequent loan   ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*   REDFIELD, SOUTH DAKOTA   or at such other place as the Government may later designate in writing, the principal sum of *(b)*   ONE HUNDRED FIFTY FIVE THOUSAND AND NO/100----------------------- dollars *(c)* ($  155,000.00   , plus interest on the unpaid principal balance at the RATE of *(d)*   TWO AND THREE EIGHTHS percent *(e)*   2.375   %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may CHANGE THE RATE OF INTEREST in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*   SEVEN installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 24,300.00 | 3/1/2016 | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |

and *(d)* $  24,300.00   thereafter on the *(e)*   1ST of March   of each *(f)* YEAR   until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*   SEVEN   years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial GTR   Date 4/6/15

ROGGENTHEIN/GTR FARM & RANCH, LLC EXHIBIT 1

FSA-2026 (12-05-12)                                                                                    Page 2 of 3

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _GTR_    Date _4/6/15_

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 1

FSA-2026 (12-05-12)                                                                      Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

Signature(s) As Described In State Supplement:


*Gregory Tyler Roggenthen*  Manager
GTR Farm & Ranch LLC    (Gregory Tyler Roggenthen as Manager & Individual)


NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial of loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

  

This form is available electronically.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

| FSA-2026 (12-05-12) | U.S. DEPARTMENT OF AGRICULTURE Farm Service Agency | Position 2 |
|---|---|---|

## PROMISSORY NOTE

| 1. Name GTR FARM & RANCH LLC | 2. State SOUTH DAKOTA | 3. County SPINK |
|---|---|---|

| 4. Case Number | 5. Fund Code 44 | 6. Loan Number 04 | 7. Date MARCH 25, 2016 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE OL-BP-Reg-1 YR | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☐ Initial loan    ☐ Conservation easement    ☐ Deferred payments

☐ Consolidation    ☐ Rescheduling    ☐ Debt write down

☒ Subsequent loan    ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*   REDFIELD, SOUTH DAKOTA   or at such other place as the Government may later designate in writing, the principal sum of *(b)*   ONE HUNDRED SEVENTY THOUSAND AND NO/100-------------------------

dollars *(c)* ($ 170,000.00           , plus interest on the unpaid principal balance at the RATE of *(d)* TWO AND THREE EIGHTHS

percent *(e)* 2.375   %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*   ONE

Installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 173,000.00 | 03/01/2017 | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |
| $ NA | NA | $ NA | NA |

and *(d)* $ N/A .   thereafter on the *(e)* N/A   of each *(f)* N/A   until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*   ONE   years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial GTR   Date 3/25/16

◯        ◯

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 2

FSA-2026 (12-05-12)

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial _GTR_   Date _3/25/16_

FSA-2026 (12-05-12)                                                                                    Page 3 of 3

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

Signature(s) As Described In State Supplement:

_Manager_

GTR FARM & RANCH LLC      (Gregory Tyler Roggenthen as Manager & Individual)

NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

This form is available electronically.

| CCC-186 (10-28-14) | U.S. DEPARTMENT OF AGRICULTURE Commodity Credit Corporation | | FOR FSA USE ONLY | | |
|---|---|---|---|---|---|
| | | 1. Loan Identification Number | | | |
| | | A. State Code 46 | B. County Code 115 | C. Loan Number 2015/00016 | |

**Farm Storage Facility Loan Program**

**PROMISSORY NOTE AND SECURITY AGREEMENT**

| 7A. Debtor's Name and Address *(Including ZIP Code)* GTR Farm & Ranch, LLC | 7B. Telephone Number *(Including Area Code)* | 2. Amount Financed $ 80,000.00 | | |
|---|---|---|---|---|
| | | 3. Annual Percentage Rate 2.0 % | 4. Finance Charge 1/ $ 6,526.70 | |
| | | 5. No. of Annual Installments 7 | 6. Installment Amount $ 12,360.96 | |
| 8. Co-Debtor's Name and Address *(Including ZIP Code)* Gregory Tyler Roggenthen | FILE COPY | 1/ Assuming installments are paid on anniversary date at the interest rate shown in item 3 above. | | |

The undersigned Debtor(s) jointly and severally promise to pay to the order of the Commodity Credit Corporation (CCC) the principal amount shown above as "Amount Financed," together with interest and other charges provided herein. Payment shall be in the number of equal annual installments shown above with interest at the "Annual Percentage Rate" specified above. Equal loan installments, amortized over the loan term, are due and payable on the annual anniversary date. Payments shall be applied first to interest and then to principal. Payment of loan installments and interest shall be made by check, cash, money order, or by deduction from amounts due Debtor from CCC. Any delinquent amount may be deducted and paid out of any amounts due Debtor under any program carried out by any agency of the Department of Agriculture and any other agency of the United States. The Debtor waives presentment for payment, demand, protest, notice of protest, and notice of nonpayment of this note.

Debtor hereby grants to CCC as collateral security for the payment of this note, plus interest and charges, a security interest in the following described farm storage equipment *(a)*:

GSI 55,000 bu grain bin, Fan: SN:CA15-0635 10 HP; 1750W, motor: Model:C215K17F831A 10 HP 7.5; Fan: SN: CA15 0639, Model CF-10-1CG, motor part# MTR-0135; Auger: 8" series 1 & 3, motor: Cat# FDL3732M SN: . F1508285141, 7.5 HP, 230V 1730 RPM, winding stairway & all related equipment.

**and the proceeds from any disposition of the collateral.** The collateral shall not be sold without prior written authority of CCC. Such collateral is to be located upon the premises in Debtor's possession described *(b)*:

W1/2 SW 24-116-62

Debtors shall grant CCC such additional security as it may require. The above provisions and those on the reverse hereof have been read and considered by the undersigned. It is agreed that by signing this combined Promissory Note and Security Agreement, they make the representations, warranties, and agree to all the terms and conditions specified.

| 9A. Debtor's Signature (By) | 9B. Title/Relationship of the Individual if Signing in a Representative Capacity Owner | 9C. Debtor's ID No. *(Last 4 digits)* | 9D. Date *(MM-DD-YYYY)* 11/30/15 |
|---|---|---|---|
| 10A. Co-Debtor's Signature (By) | 10B. Title/Relationship of the Individual if Signing in a Representative Capacity operator | 10C. Debtor's ID No. *(Last 4 digits)* | 10D. Date *(MM-DD-YYYY)* 11/30/15 |

| 11. COMMODITY CREDIT CORPORATION SECURED PARTY | | |
|---|---|---|
| 11A. By: Approving Official's Signature | 12. FSA County Office Name and Address *(Including ZIP Code)* Spink County FSA | |
| 11B. Title FLO | 11C. Date of Disbursement *(MM-DD-YYYY)* 11/30/15 | Telephone Number *(Include Area Code):* |

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 USC 552a - as amended). The authority for requesting the information identified on this form is 7 CFR Part 1436, the Commodity Credit Corporation Charter Act (15 U.S.C. 714 et seq.), and the Food, Conservation, and Energy Act of 2008 (Pub. L. 110-246). The information will be used to specify the terms and conditions for the Farm Storage Facility Loan Program Note and Security Agreement. The information collected on this form may be disclosed to other Federal, State, Local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information will result in a determination of ineligibility for CCC financing under the Farm Storage Facility Loan Program.

This information collection is exempted from the Paperwork Reduction Act as it is required for the administration of the Food, Conservation, and Energy Act of 2008 (see The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

**RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.**

The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the bases of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department. (Not all prohibited bases will apply to all programs and/or employment activities.) Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). Individuals who are deaf, hard of hearing, or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 (in Spanish).

If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov. USDA is an equal opportunity provider and employer.

CCC-186 (10-28-14)                                                                          Page 2 of 3

### CCC-186 TERMS AND CONDITIONS

1   The Debtor represents, covenants, and agrees that:

   (a)  The Debtor is the absolute and exclusive owner of the collateral, said collateral is free from all liens, encumbrances, or other security interests, and the Debtor will warrant and defend the collateral against the claims of all other persons.

   (b)  The Debtor will use the loan funds secured hereby for the purpose for which they are advanced and will properly care for the collateral, and keep it in good condition and available for the storing and conditioning only approved facility loan commodities until the entire loan is repaid. The Debtor will promptly pay when due all indebtedness secured hereby, all taxes, liens, and other charges assessed upon or attaching to the collateral and will not encumber the collateral, remove, sell or otherwise dispose of the collateral or of any interest therein or permit others to do so.

   (c)  Any authorized representative of CCC may at any time enter upon the premises where the collateral is located and inspect the same.

   (d)  If any amounts required herein to be paid by him or her are not paid when due, they may be paid by CCC which shall be secured for such payments and interest thereon at the applicable rate of interest then in effect. Such payments shall be due and payable to CCC immediately without demand at the office of the FSA County Committee which signed this note.

   (e)  During the life of this loan the loan collateral shall not be used by any commercial operation including, but not limited to, elevators, warehouses, dryers or processing plants. The storage and handling of approved facility loan commodities, whether paid or unpaid, for persons other than the borrower, except for family members as defined in 7 CFR Part 718, and/or tenants and landlords sharing in the crop requiring storage is not allowed. The entire indebtedness will immediately become due and payable if the above provisions are violated, except as authorized by CCC.

2.   The Debtor certifies that the evidence furnished to the FSA County Committee as to the cost of the collateral represents the total cost of such property and that all debts on the property in excess of the amount of the loan have been paid, that he or she has read this note and security agreement and that he or she understands and agrees that the loan is made subject to and in consideration of the representations, warranties and agreements contained therein, and that this note is subject to the present regulations of CCC and to its future regulations not inconsistent with the express provisions hereof.

3.   Upon default hereunder *(whether by failure to pay promptly any indebtedness or installment thereof or interest thereon, or to perform any covenants or agreements herein contained)*, or if any of the Debtor's representations or warranties herein or if the loan application proves false, or upon the death, bankruptcy, insolvency, or incompetency of the Debtor or attachment or levy on collateral by any court process:

   (a)  CCC may declare the entire indebtedness secured hereby immediately due and payable. In that event, CCC may remove the collateral and sell same.

   (b)  The Debtor hereby waives all rights of notice, appraisal, compulsory disposition, exemption, and redemption he or she may otherwise have by law.

   (c)  A default will exist under any other security instrument held by CCC and executed or assumed by the Debtor on real or personal property, and default under any such other security instrument will constitute default hereunder.

4.   If the collateral is acquired by CCC through foreclosure or other means, at the option of CCC and at no expense to CCC, such property shall remain on the above-described real estate for a period not to exceed six (6) months after the date of acquisition by CCC.

5.   Proceeds for disposition of the collateral shall be applied first on expenses of retaking, holding, preparing for sale, selling, and for payment of reasonable attorneys' fees and legal expenses incurred by CCC, second to the satisfaction of indebtedness secured hereby, third to the satisfaction of subordinate security interests to the extent required by law, fourth to any other obligations of the Debtor owing to or insured by CCC, and fifth to the Debtor. The Debtor will be liable for any deficiency owed to CCC after such disposition of proceeds of collateral.

6.   It is the intent of the Debtor and CCC that to the extent permitted by law and for the purpose of this note and security agreement the collateral covered hereby shall remain personalty and shall not be accessioned to other goods.

7.   If any provision of this note and security agreement is held invalid or unenforceable it shall not affect any other provisions hereof, but this note and security agreement shall be construed as if it had never contained such invalid or unenforceable provision.

8.   The rights and privileges of CCC under this note and security agreement shall inure to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of the Debtor contained in this note and security agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.



CCC-186 (10-26-14)

**CCC-186 TERMS AND CONDITIONS (Continued)**

9. The terms and conditions contained on this form are in addition to the applicable program regulations found at 7 C.F.R. Part 1436. To the extent that the terms and conditions conflict with the regulations, the regulations prevail. Additionally, the regulations and statutes applicable to CCC operations apply to this program.

10. CCC is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

11. If it is discovered that a producer did not comply with lobbying disclosure requirements (31 U.S.C. 1352), applicants for and recipients of: 1) A Federal loan exceeding $150,000; or 2) A Federal contract, grant, or cooperative agreement payment exceeding $100,000 must file, with the disbursing office a SF-LLL if they have or will use monies received for lobbying purposes. This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by section 1352, title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

12. Debtor and Co-Debtors whose signature appears on CCC-186, Items 9A and 10A MUST initial and date the corresponding item numbers referenced below:

| Initial | Date | Initial | Date |
|---------|------|---------|------|
| 9A  *GTR* | 11/32/15 | 10A  *GTR* | 11/32/15 |

13. If applicable, Co-Debtor(s) whose signature and date appears on CCC-186-1, Items 10A through Item 17A MUST initial and date the corresponding item numbers referenced below:

| Initial | Date | Initial | Date | Initial | Date | Initial | Date |
|---------|------|---------|------|---------|------|---------|------|
| 10A |  | 11A |  | 12A |  | 13A |  |
| 14A |  | 15A |  | 16A |  | 17A |  |

INSTRUMENT NO. 6( 3        Pages: 2
BOOK: 264 MTG
PAGE: 899

2015/12/02 10:22:53 AM

SHARON JUNGWIRTH, REGISTER OF DEEDS
SPINK COUNTY, SOUTH DAKOTA

Recording Fee: $ 30.00
Return To: FARM SERVICE AGENCY, REDF

This form is available electronically.
**CCC-297**
**(03-23-12)**

**U.S. DEPARTMENT OF AGRICULTURE**
Commodity Credit Corporation

## SEVERANCE AGREEMENT

*See Page 2 for Privacy Act and Paperwork Reduction Act Statements.*

**WHEREAS,** *(a)*   Timber Creek Land & Cattle, LLC _____ and

*(b)* _____ , of *(c)* _____ Frankfort _____ , County of

*(d)*  Spink _____ , State of *(e)*   South Dakota _____ , (herein called Debtors), have
applied to the Commodity Credit Corporation (herein called the Secured Party), for a loan and have agreed to give the
Secured Party a security interest in the following-described fixture(s) *(f)*:

1- 48' x 9 ring GSI 40 Series grain Bin with 55,0000 bu capacity, staircase, powersweep
system and all related equipment.

which fixture(s) is (are) affixed to the following-described real estate: (Add legal description) *(g)*

W1/2 SW1/4 24-116-62

**NOW, THEREFORE,** in consideration of the making or insuring of such loan by the Secured Party, the
undersigned parties hereby (1) consent that the Debtors may grant to the Secured Party a security interest in said fixture(s)
under the Uniform Commercial Code, (2) consent to the installation of said equipment and agree said equipment shall be and
remain severed from the real property described above, and (3) agree that upon default of Debtors the Secured Party may (a)
take possession of and remove said fixture(s) without notice to the undersigned parties and without liability to them for any
diminution of value of the real estate caused by the absence of the fixture(s) or by any necessity for replacing the fixture(s),
and (b) enforce its security interest against said fixture(s) as personally.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

CCC-297 (03-23-12)

Page 2 of 2

IN WITNESS WHEREOF, the undersigned parties hereto have executed this instrument this *(h)* 16th day of *(i)* November , *(j)* 2015 (year).

if a corporation:

Timber Creek Land & Cattle, LLC
*(k)* Name of Corporate (Mortgagee) (Owner) *

*(n)* Individual (Mortgagee) (Owner) *

By Robert Roggenthen Robert Roggenthen

*(l)* Duly Authorized Officer

*(o)* Individual (Mortgagee) (Owner) *

Principal
*(m)* Title

CORPORATE
SEAL

"Mortgagee" includes holder of any type of real estate lien.

*Delete "Mortgagee" or "Owner."

*(p)* STATE OF ~~SOUTH DAKOTA~~ Arizona
*(q)* COUNTY OF ~~SPINK~~ Pima } ss.   ACKNOWLEDGMENT:

On this *(r)* 16th day of *(s)* November in the year *(t)* 2015 , before me, the undersigned, a Notary Public in and for said State, personally appeared *(u)* Robert Roggenthen , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, execute the instrument.

(SEAL)

MIRIAM K PATINO
Notary Public - Arizona
Pima County
My Comm. Expires Jun 30, 2018

*(v)* Notary Public

My commission expires *(w)* 06/30/2018
(MM-DD-YYYY)

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 USC 552a - as amended). The authority for requesting the information identified on this form is 7 CFR Part 1436, the Commodity Credit Corporation Charter Act (15 U.S.C. 714 et seq.), and the Food, Conservation, and Energy Act of 2008 (Pub. L. 110-246). The information will be used to obtain a Farm Storage Facility Loan Program severance agreement when there are real estate lien holders involving the land where a storage facility is to be located. The information collected on this form may be disclosed to other Federal, State, Local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information will result in a determination of ineligibility for CCC financing under the Farm Storage Facility Loan Program.

This information collection is exempted from the Paperwork Reduction Act, as it is required for the administration of the Food, Conservation, and Energy Act of 2008 (see Pub. L. 110-246, Title I, Subtitle F – Administration).

The provisions of appropriate criminal and civil fraud, privacy, and other statutes may be applicable to the information provided. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 3-1

This form is available electronically.

Form Approved – OMB No. 0560-0238
(See Page 7 for Privacy Act and Paperwork Reduction Act Statements).

| FSA-2028<br>(11-12-14) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 1 |
|---|---|---|

## SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT**, dated (a) ___April 6___ , **2015** ___ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **GTR FARM & RANCH LLC.**

(Debtor), whose mailing address is (c) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE**, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _GTR_ Date _4/6/15_

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 4

**FSA-2028** (11-12-14)                                                                 Page 2 of 7

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are
planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)*
within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security
Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to
be planted, growing or grown or harvested on the following described real estate:

| (1)
Farm or Other Real Estate Owner | (2)
Approximate
Number of Acres | (3)
County and State | (4)
Approximate Distance and
Direction from Named Town or
Other Description |
|---|---|---|---|
| Dad | 531 | | |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all
payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas
existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived
from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial *GTR*  Date *4/6/15*

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 4

FSA-2028 (11-12-14)                                                                                       Page 3 of 7

(c) All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* _South Dakota_

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Planter | Case IH | 900 | | | |
| 2 | 1 | Tractor | Case IH | 7130 | | | |
| 3 | 1 | Corn Head - To Purchase | Gleaner | 12r 30 | | | |
| 4 | 1 | Sprayer - To Purchase | | | | | |
| 5 | 1 | Combine - To Purchase | Gleaner | R62 | | 1994 | RL2L64489L |
| 6 | 1 | Pickup | Ford | F550 | | 2000 | 1FDAW57F4YEE44021 |
| 7 | 1 | Semi Truck - to purchase | | | | | |
| 8 | 1 | Grain Trailer - To Purchase | Timpte | | | | |
| 9 | 1 | Truck - Volvo 1800 | Volvo, 1966 trk | | | | 20842 |

(10) Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _GTR_  Date _4/6/15_

FSA-2028 (11-12-14)                                                           Page 4 of 7

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

    South Dakota

| (2) Line No. | (3) Quantity | (4) Kind-Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |
| 26 | | | | | | | |
| 27 | | | | | | | |
| 28 | | | | | | | |

Initial _GR_   Date _4/6/15_

FSA-2028 (11-12-14)                                                                                    Page 5 of 7

(e)  All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a)  Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b)  Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c)  Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d)  Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e)  Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f)  Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g)  All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h)  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _GTR_   Date _4/6/15_

FSA-2028 (11-12-14)                                                                                                Page 6 of 7

**4. IT IS FURTHER AGREED THAT:**

(a) Until default, Debtor may retain possession of the collateral.

(b) Default shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

   (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

   (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

   (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly. **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial _GTR_ Date _4/6/15_

**FSA-2028 (11-12-14)**                                                                    Page 7 of 7

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m)  Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2. (c) or (d) with an asterisk*.

## 5.  CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements.  If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

6A. _Gregory Tyler Roggenthen_   Manager          6B. (Date) _4/6/15_
GTR FARM & RANCH LLC

_____                        (Date) _____
Debtor

| NOTE: | *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees.  The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.* |
| | |
| | *According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0560-0238.  The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.* |

*The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the bases of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department. (Not all prohibited bases will apply to all programs and/or employment activities.) Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  Individuals who are deaf, hard of hearing or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 or (800) 845-6136 (in Spanish).*

*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov. USDA is an equal opportunity provider and employer.*

This form is available electronically.

Form Approved - OMB No. 0560-0238
*(See Page 7 for Privacy Act and Paperwork Reduction Act Statements).*

| FSA-2028<br>(02-01-16) | U.S. DEPARTMENT OF AGRICULTURE<br>Farm Service Agency | Position 1 |
|---|---|---|

## SECURITY AGREEMENT

1.  **THIS SECURITY AGREEMENT**, *dated (a)*  __March 25_____ , 2016_____ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **GTR FARM & RANCH LLC,**

(Debtor), whose mailing address is (c) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2.  **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE**, in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**MICROLOANS ONLY.** **DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral as indicated with (m). For the microloan collateral involving equipment and livestock, Secured Party acknowledges that it is taking a security interest in the specifically listed equipment or livestock and all replacements or substitutions. For microloan crop collateral, Secured Party acknowledges that it is taking a security interest in the specific crop, inventory, accounts and contract rights, crop indemnity payments, all entitlements, benefits, and payments from State and Federal farm programs, and deposit amounts arising out of the Debtor's operation or ownership of that crop. Any after acquired provisions in this Security Agreement do not apply to microloan collateral unless the loan is serviced pursuant to 7 C.F.R. part 766.  PLEASE NOTE: This provision shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein for all other loans:

**ALL OTHER LOANS.** **DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(o)*:

Initial _GTR_  Date _3/25/16_____

FSA-2028 (02-01-16)                                                                                    Page 2 of 8

(b) All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
| Dad | 531 | | |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial *GTR* Date 3/25/16

FSA-2028 (02-01-16)                                                                                              Page 3 of 8

(c) **All farm and other equipment (**except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* __South Dakota__

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Planter | Case IH | 900 12R | | | JJC0018924 |
| 2 | 1 | Tractor | Case IH | 7130 | | | |
| 3 | 1 | Combine | Gleaner | R62 | | | RG264439L |
| 4 | 1 | Corn Head | | 630N/ 6R, 30' | | | 2168 |
| 5 | 1 | Bean Head | | 500 / 20' | | | 2240623F |
| 6 | 1 | Sprayer | Melroe | | | | 1153445-81 |
| 7 | 2 | Fertilizer Storage Tanks | | 1500 gal each | | 2015 | |
| 8 | 1 | V-Rake | Twin Star | 2030 hydraulic | | | 225TR |
| 9 | 1 | Tractor/loader | | Mf1105 | | | |
| 10 | 1 | Combine Monitor | | | | | |
| 11 | 1 | Baler | New Holland | BR7090 | | 2008 | Y8N037965 |
| 12 | 1 | Auger | Westfield | 13x111 | | 2005 | 170570 |
| 13 | 1 | Fertilizer System | | 2x150 gal | | 2015 | |
| 14 | 1 | Pickup | Ford | F550 | | 2000 | 1FDAW56F44EE44021 |
| 15 | 1 | Hopper Bottom w/ electric Tarps | Wilson | 42' | | 1993 | 1W1MBFYD1PA218237 |
| 16 | 1 | Freightliner | Freightliner | FRHT/FLD120 | | 1991 | 1FUYDPYB7MP511412 |
| 17 | 1 | Pickup | Ford | F250 - Diesel | Good | 2005 | 1FTSW21P75EB93238 |
| 18 | 1 | Car - Volvo 1800 | Volvo, 1966 | | | | |
| 19 | 1 | Sandrail | | | | | |

(10)Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _GTR_ Date _3/25/16_

FSA-2028 (02-01-16)

Page 4 of 8

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |
| 26 | | | | | | | |
| 27 | | | | | | | |
| 28 | | | | | | | |

Initial *GTR*   Date *3/25/16*

FSA-2028 (02-01-16)                                                                                                  Page 5 of 8

(c) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; (2) any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced; (2) comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; (3) care for and maintain collateral in a good and husbandlike manner; (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; (5) permit Secured Party to inspect the collateral at any reasonable time; (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and (8) maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all (1) indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and (4) fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial _GTR_ Date _3/29/16_

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 5

FSA-2028 (02-01-16)

**4. IT IS FURTHER AGREED THAT:**

(a) Until default, Debtor may retain possession of the collateral.

(b) Default shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly WAIVES the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial _GTR_ Date _3/25/16_

FSA-2026 (02-01-16)                                                                                          Page 7 of 8

(j) If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k) Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l) **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m) Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2 with an asterisk*.

## 5. CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements. If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

Initial _GTR_   Date _3/25/16_

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 5

FSA-2028 (02-01-16)                                                                                  Page 8 of 8

6A. _~Signature~ Manager_          6B. *(Date)* _3/25/16_
GTR FARM & RANCH LLC

_____          *(Date)* _____
Debtor

NOTE:   *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.   RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs). Remedies and complaint filing deadlines vary by program or incident.

Persons with disabilities who require alternative means of communication for program information (e.g., Braille, large print, audiotape, American Sign Language, etc.) should contact the responsible Agency or USDA's TARGET Center at (202) 720-2600 (voice and TTY) or contact USDA through the Federal Relay Service at (800) 877-8339. Additionally, program information may be made available in languages other than English.

To file a program discrimination complaint, complete the USDA Program Discrimination Complaint Form, AD-3027, found online at http://www.ascr.usda.gov/complaint_filing_cust.html and at any USDA office or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992. Submit your completed form or letter to USDA by: (1) Mail: U.S. Department of Agriculture Office of the Assistant Secretary for Civil Rights 1400 Independence Avenue, SW Washington, D.C. 20250-9410; (2) Fax: (202) 690-7442; or (3) email: program.intake@usda.gov.

# UCC Current Status (Unofficial)

| | | | |
|---|---|---|---|
| **UCC Document #:** | 20150961670167 | **Filing Date:** | 04/06/2015 |
| **Record Type:** | UCC/EFS | **Lapse Date:** | 04/06/2020 |
| **Other Info:** | PROCEEDS of collateral are also covered | | |
| | PRODUCTS of collateral are also covered | | |
| | Pay proceeds to Debtor AND Secured Party | | |

## Debtors:

GTR FARM & RANCH LLC, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## Secured Parties:

USA, ACTING THROUGH FARM SERVICE AGENCY, ▮▮▮▮▮▮▮▮   ▮▮▮▮▮▮▮▮

## Related UCC Documents:

| Filing Date | UCC Document # | Type |
|---|---|---|

## EFS Master List

| Farm/Product Code | Year | Quantity | County | Location/Description |
|---|---|---|---|---|
| spring wheat | ALL | ALL | Spink | |
| winter wheat | ALL | ALL | Spink | |
| field corn | ALL | ALL | Spink | |
| soybeans | ALL | ALL | Spink | |

Includes Records Processed Through 7/18/2019 4:30 PM

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6

UCC 1 / EFS Filing Verification



## UCC1 / EFS Filing Verification

**4/6/2015**

**General Filing Information**

Filing Entity:
Filing Source:
County Recording Fee:
Record ID:

Office of the Secretary of State
Electronic

20150961670167

UCC ☑        EFS ☑

**Secured Party Information**
USA, Acting through Farm Service Agency

████████████        SD        ██████ - 0000

**Debtor Information**
GTR Farm & Ranch LLC
LLC                    None            NONE
████████████
████████████████████████████████████

**UCC Collateral**
All farm products, including but not limited to livestock, crops and supplies; equipment, goods, inventory, accounts, general intangibles, chattel paper, documents, supporting obligations, payments, investment property, instruments, commercial tort claims.

All proceeds, products, accessions, and security acquired hereafter.

The security interest perfected secures a future advance clause and the security agreement contains an after-acquired clause.

Disposition of such collateral is not hereby authorized.

☑        Proceeds Covered        ☑        Products Covered

**EFS Collateral Descriptions**

| Product | Year | Quantity | County | Location |
|---|---|---|---|---|
| 1002-spring wheat | ALL | ALL | 57-Spink | |
| 1003-winter wheat | ALL | ALL | 57-Spink | |
| 2007-field corn | ALL | ALL | 57-Spink | |

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6

| 3000-soybeans | ALL | ALL | 57-Spink |
|---|---|---|---|

**Proceeds Paid to Debtor** ☑                    **Proceeds Paid to Secured Party** ☑

FARM & RANCH, LLC EXHIBIT 6                    4/6/2015

Certified Search

Page 1 of 1

**Certified Search**

**4/6/2015**

## Office of the
## Secretary of State

Debtor ID: ▮▮▮▮▮▮ Name: GTR FARM & RANCH LLC

The following UCC 1 statements are on file for this debtor:

| | Secured Party | Assignee |
|---|---|---|
| ID: 20150961670167 | USA, ACTING THROUGH FARM SERVICE AGENCY | |
| File Date: 4/6/2015 4:00:00 PM | | |
| Expires: 4/6/2020 Active | Amendments: 0 Releases: 0 Corrections: 0 | |
| ID: 20141211270098 | SOUTH DAKOTA WHEAT GROWERS ASSOCIATION | |
| File Date: 5/1/2014 12:00:00 PM | | |
| Expires: 5/1/2019 Termination Filed | Amendments: 0 Releases: 0 Corrections: 0 | |

The undersigned filing officer hereby certifies that the above listing is a record of all presently effective UCC financing statements which name the debtor, GTR FARM & RANCH LLC (46-4364208) and which are on file in my office as of 04 PM, APRIL 06, 2015. The Secretary of State and the filing officer hereby disclaim responsibility in this record search and certification for other than the specifically named debtor cited in your request for information.

Date: 4/6/2015

*Shantel Krebs*

Shantel Krebs
Secretary of State
State of South Dakota



# *South Dakota Secretary of State*
## SHANTEL KREBS

## UCC Lien Certified Search Report

**Search Criteria:**

Organization: GTR FARM & RANCH LLC| SD
Active (unlapsed records only, includes terminations)

| UCC Listing | | |
|---|---|---|
| UCC1 Doc #: 20141211270089 | Filed: 05/01/2014 12:00 PM | Lapse: 05/01/2019 11:59 PM |

| Debtor(s): | GTR FARM & RANCH, LLC, |
|---|---|
| | ROGGENTHEN, GREGORY TYLER, |
| | ROGGENTHEN, ROBERT LESLIE, |

Secured Party(s): SOUTH DAKOTA WHEAT GROWERS ASSOCIATION,

| UCC Financing Statement Amendment | Doc #: 20142041670107 | Filed: 07/23/2014 11:59 PM |
|---|---|---|
| UCC Financing Statement Amendment | Doc #: 20143111470072 | Filed: 11/07/2014 11:59 PM |

| UCC1 Doc #: 20141211270098 | Filed: 05/01/2014 12:00 PM | Lapse: 05/01/2019 11:59 PM |
|---|---|---|

| Debtor(s): | GTR FARM & RANCH, LLC, |
|---|---|
| | ROGGENTHEN, GREGORY |
| | ROGGENTHEN, ROBERT LESLIE, |

Secured Party(s): SOUTH DAKOTA WHEAT GROWERS ASSOCIATION,

| UCC Financing Statement Amendment | Doc #: 20143111470073 | Filed: 11/07/2014 11:59 PM |
|---|---|---|

| UCC1 Doc #: 20150961670167 | Filed: 04/06/2015 04:00 PM | Lapse: 04/06/2020 11:59 PM |
|---|---|---|

Debtor(s): GTR FARM & RANCH LLC,

Secured Party(s): USA, ACTING THROUGH FARM SERVICE AGENCY,

| UCC1 Doc #: 20152671470087 | Filed: 09/24/2015 02:00 PM | Lapse: 09/24/2020 11:59 PM |
|---|---|---|

Debtor(s): GTR FARM & RANCH, LLC,

Secured Party(s): USA, ACTING THROUGH COMMODITY CREDIT CORPORATION,

| UCC Financing Statement Amendment | Doc #: 20153341026106 | Filed: 11/30/2015 10:40 AM |
|---|---|---|

| UCC1 Doc #: 20160041488798 | Filed: 01/04/2016 02:25 PM | Lapse: 01/04/2021 11:59 PM |
|---|---|---|

South Dakota Secretary of State · 500 E. Capitol Ave · Pierre, SD 57501-5070
http://sdsos.gov/ · phone (605) 773-4422 · fax (605) 773-4550
sos.ucc@state.sd.us

Page 1 of 3

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6



*South Dakota Secretary of State*
## SHANTEL KREBS

## UCC Lien Certified Search Report

| UCC Listing | | |
|---|---|---|

| Debtor(s): | GTR FARM AND RANCH LLC, ████████████████ |
|---|---|
| Secured Party(s): | USA, ACTING THROUGH COMMODITY CREDIT CORPORATION, ████████████ |

| UCC Financing Statement Amendment | Doc #: 20161161518063 | Filed: 04/25/2016 03:37 PM |
|---|---|---|
| UCC1 Doc #: 20160041488923 | Filed: 01/04/2016 02:39 PM | Lapse: 01/04/2021 11:59 PM |

| Debtor(s): | GTR FARM AND RANCH LLC, ████████████████ |
|---|---|
| Secured Party(s): | USA, ACTING THROUGH COMMODITY CREDIT CORPORATION, ████████ |

| UCC Financing Statement Amendment | Doc #: 20161161518076 | Filed: 04/25/2016 03:38 PM |
|---|---|---|
| UCC1 Doc #: 20163331074460 | Filed: 11/28/2016 10:30 AM | Lapse: 11/28/2021 11:59 PM |

| Debtor(s): | GTR FARM & RANCH LLC, ████████████ |
|---|---|
| Secured Party(s): | USA, ACTING THROUGH COMMODITY CREDIT CORPORATION, ██████ |

| UCC1 Doc #: 20163331074474 | Filed: 11/28/2016 10:32 AM | Lapse: 11/28/2021 11:59 PM |
|---|---|---|
| Debtor(s): | GTR FARM & RANCH LLC, ████████████ |
| Secured Party(s): | USA, ACTING THROUGH COMMODITY CREDIT CORPORATION, ██████ |

\* Denotes document numbers that do not have electronic copies available. Contact the UCC Division for questions.

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6



*South Dakota Secretary of State*

## SHANTEL KREBS

THE UNDERSIGNED FILING OFFICER HEREBY CERTIFIES THAT THE ABOVE LISTING IS A RECORD OF ALL PRESENTLY EFFECTIVE UCC FINANCING STATEMENTS WHICH NAME THE ABOVE DEBTOR AND WHICH ARE ON FILE IN MY OFFICE AS OF 4:30PM, JULY 2, 2018.

THE SECRETARY OF STATE AND THE FILING OFFICER HEREBY DISCLAIM RESPONSIBILITY IN THIS RECORD SEARCH AND CERTIFICATION FOR OTHER THAN THE SPECIFICALLY NAMED DEBTOR CITED IN YOUR REQUEST FOR INFORMATION.

7/3/2018 10:17 AM

*Shantel Krebs*

Shantel Krebs
Secretary of State
State of South Dakota

South Dakota Secretary of State · 500 E. Capitol Ave · Pierre, SD 57501-5070
http://sdsos.gov/ · phone (605) 773-4422 · fax (605) 773-4550
sos.ucc@state.sd.us

Page 3 of 3

Check VIN



## SDCARS ONLINE

### Check Vehicle Information

**Enter the VIN/HIN you want to check in the box below**
(Generally, vehicle VINs do not use alpha letters O or I, these are usually the numeric 0 or 1.)

| 1FTSW21P75EB93238 | | Check |

### Vehicle Information

| | | | |
|---|---|---|---|
| **Year** | 2005 | **Type** | TRUCK |
| **Make** | FORD | **2nd Type** | PICKUP OVER 6000 LBS |
| **Model** | F250 | **Color** | MAROON/BURGUNDY |
| **VIN/HIN** | 1FTSW21P75EB93238 | **Fuel** | DIESEL |

### Title Information

| | | | |
|---|---|---|---|
| **Date** | 02/12/2016 | **Type** | ELT |
| **Title #** | 153381088 | **Status** | COMPLETE |
| **Title Print Date** | | **Sub Status** | |
| **Odometer Brand** | ACTUAL READING | **Odometer** | 73922 |
| **Number of Owners** | 2 | **Brand** | CLEAR |
| **Damage Disc** | $0 | | |

### Lien Information

| Lien # | Name | Lien Date | Is Participating |
|---|---|---|---|
| 3002530 | FIRST INTERSTATE BANK | 12/04/2015 | Yes |
| 3002551 | FARM SERVICE AGENCY | 12/21/2015 | No |

### Additional VINs

No Additional VINS found.

Back to SDCars.org

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6

Check VIN                                                                    Page 1 of 2

                                                    SDCARS ONLINE

## Check Vehicle Information

**Enter the VIN/HIN you want to check in the box below**
(Generally, vehicle VINs do not use alpha letters O or I, these are usually the numeric 0 or 1.)

1FUYDPYB7MP511412        Check

### Vehicle Information

| | | | |
|---|---|---|---|
| Year | 1991 | Type | TRUCK |
| Make | FREIGHTLINER | 2nd Type | TRUCK |
| Model | FLD120 | Color | BLUE |
| VIN/HIN | 1FUYDPYB7MP511412 | Fuel | DIESEL |

### Title Information

| | | | |
|---|---|---|---|
| Date | 06/08/2015 | Type | ELT |
| Title # | 151420322 | Status | COMPLETE |
| Title Print Date | | Sub Status | |
| Odometer Brand | EXEMPT | Odometer | |
| Number of Owners | 1 | Brand | CLEAR |
| Damage Disc | $0 | | |

### Lien Information

| Lien # | Name | Lien Date | Is Participating |
|---|---|---|---|
| 2855552 | FARM SERVICE AGENCY | 05/22/2015 | No |

### Additional VINs

No Additional VINS found.

Back to SDCars org

**sDCARS -- South Dakota Department of Revenue
Division of Motor Vehicles**

TOP                                                                          TOP

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6

Check VIN



SDCARS ONLINE

### Check Vehicle Information

**Enter the VIN/HIN you want to check in the box below**
(Generally, vehicle VINs do not use alpha letters O or I, these are usually the numeric 0 or 1.)

| 1W1MBFYD1PA218237 | Check |

### Vehicle Information

| | | | |
|---|---|---|---|
| Year | 1993 | Type | TRAILER |
| Make | WILSON | 2nd Type | TRAILER |
| Model | 42HOPPER | Color | WHITE |
| VIN/HIN | 1W1MBFYD1PA218237 | Fuel | OTHER |

### Title Information

| | | | |
|---|---|---|---|
| Date | | Type | ELT |
| Title # | 151271203 | Status | STATE PENDING |
| Title Print Date | | Sub Status | State Received |
| Odometer Brand | | Odometer | |
| Number of Owners | 1 | Brand | CLEAR |
| Damage Disc | $0 | | |

### Lien Information

| Lien # | Name | Lien Date | Is Participating |
|---|---|---|---|
| 2844856 | FARM SERVICE AGENCY | 05/07/2015 | No |

### Additional VINs

No Additional VINS found.

| Back to SDCars.org |

**spCARS -- South Dakota Department of Revenue**
**Division of Motor Vehicles**

https://apps.sd.gov/RV66Renewals/checkvin/checkvin.aspx                     5/18/2015

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6

Check VIN                                                                Page 1 of 2

                                    SDCARS ONLINE

### Check Vehicle Information

**Enter the VIN/HIN you want to check in the box below**
(Generally, vehicle VINs do not use alpha letters O or I, these are usually the numeric 0 or 1.)

| AZ350706 | 2. |

### Vehicle Information

| | | | |
|---|---|---|---|
| Year | 2015 | Type | MOTORCYCLE |
| Make | ASSEMBLED | 2nd Type | ATV ON ROAD |
| Model | VOLKSWAGEN SANDRAIL | Color | BLACK |
| VIN/HIN | AZ350706 | Fuel | GASOLINE |

### Title Information

| | | | |
|---|---|---|---|
| Date | 10/01/2015 | Type | Paper |
| Title # | 152431540 | Status | COMPLETE |
| Title Print Date | 10/01/2015 | Sub Status | |
| Odometer Brand | EXEMPT | Odometer | |
| Number of Owners | 1 | Brand | CLEAR |
| Damage Disc | | | |

### Lien Information

| Lien # | Name | Lien Date | Is Participating |
|---|---|---|---|
| 3057936 | FARM SERVICE AGENCY | 03/18/2016 | No |

### Additional VINs

No Additional VINS found.

Back to SDCars org

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6

## SOUTH DAKOTA CERTIFICATE OF TITLE

**VEHICLE**

| TITLE NO. | TITLE ISSUE DATE | PRINTED DATE | TYPE | PREVIOUS STATE/BRAND | TAX *CODE/AMT. | WEIGHT/CC |
|---|---|---|---|---|---|---|
| 152431540 | 10/01/2015 | 10/01/2015 | OUT OF STATE | AZ | *94 | 1600 |

| YEAR | MAKE | MODEL | BODY | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|
| 2015 | ASSEMBLED | VOLKSWAGEN | SAND ATV ON R | AZ350706 |
| | | | | Az350706 |

MAIL TO: GREGORY T ROGGENTHEN

| ODOMETER READING | ODOMETER DATE | ODOMETER BRAND |
|---|---|---|
| | 10/01/2015 | EXEMPT |

BRAND

OWNER(S): GREGORY T ROGGENTHEN

OWNER ADDRESS:

FIRST LIENHOLDER:

NOTED BY                 RELEASED BY
COUNTY TREASURER    (CO. #)    (DATE)          COUNTY TREASURER    (CO. #)    (DATE)

SECOND LIENHOLDER:

NOTED BY                 RELEASED BY
COUNTY TREASURER    (CO. #)    (DATE)          COUNTY TREASURER    (CO. #)    (DATE)

THE DEPARTMENT OF REVENUE, UNDER SOUTH DAKOTA LAW CERTIFIES THAT THE PERSON(S) NAMED HEREON IS DULY REGISTERED IN THIS OFFICE AS OWNER(S) OF THE DESCRIBED PROPERTY SUBJECT TO ANY LIEN AND ENCUMBRANCES HEREIN SET FORTH. DEPARTMENT OF REVENUE; DIVISION OF MOTOR VEHICLES; 445 EAST CAPITOL AVENUE; PIERRE, SD 57501-3185.

SECRETARY:
DEPARTMENT OF REVENUE

11104 151001 131824

CONTROL NO. 2699111

ANY ALTERATIONS OR ERASURES VOID TITLE

Check VIN

Page 1 of 2

SD CARS ONLINE

## Check Vehicle Information

**Enter the VIN/HIN you want to check in the box below**
(Generally, vehicle VINs do not use alpha letters O or I, these are usually the numeric 0 or 1.)

1FDAW56F4YEE44021     Check

### Vehicle Information

| | | | |
|---|---|---|---|
| Year | 2000 | Type | TRUCK |
| Make | FORD | 2nd Type | TRUCK |
| Model | F550 SUPER DUTY | Color | WHITE |
| VIN/HIN | 1FDAW56F4YEE44021 | Fuel | DIESEL |

### Title Information

| | | | |
|---|---|---|---|
| Date | | Type | ELT |
| Title # | 150840916 | Status | COUNTY PENDING |
| Title Print Date | | Sub Status | |
| Odometer Brand | ACTUAL READING | Odometer | 121400 |
| Number of Owners | 2 | Brand | CLEAR |
| Damage Disc | | | |

### Lien Information

| Lien # | Name | Lien Date | Is Participating |
|---|---|---|---|
| 2812014 | FARM SERVICE AGENCY | 03/25/2015 | No |

### Additional VINs

No Additional VINS found.

Back to SDCars.org

soCARS -- South Dakota Department of Revenue
Division of Motor Vehicles

TOP

TOP

3/25/2015

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6

Check VIN                          ○                          ○                    Page 1 of 2



# SDCARS ONLINE

### Check Vehicle Information

#### Enter the VIN/HIN you want to check in the box below
(Generally, vehicle VINs do not use alpha letters O or I, these are usually the numeric 0 or 1.)

20842                    Check

### Vehicle Information

| | | | |
|---|---|---|---|
| **Year** | 1966 | **Type** | PASSENGER |
| **Make** | VOLVO | **2nd Type** | PASSENGER |
| **Model** | 240/SE | **Color** | BLUE |
| **VIN/HIN** | 20842 | **Fuel** | GASOLINE |

### Title Information

| | | | |
|---|---|---|---|
| **Date** | | **Type** | ELT |
| **Title #** | 150840895 | **Status** | COUNTY PENDING |
| **Title Print Date** | | **Sub Status** | |
| **Odometer Brand** | EXEMPT | **Odometer** | |
| **Number of Owners** | 1 | **Brand** | CLEAR |
| **Damage Disc** | | | |

### Lien Information

| Lien # | Name | Lien Date | Is Participating |
|---|---|---|---|
| 2812000 | FARM SERVICE AGENCY | 03/25/2015 | No |

### Additional VINs

No Additional VINS found.

### Vehicle Information

| | | | |
|---|---|---|---|
| **Year** | 1975 | **Type** | TRAILER |
| **Make** | VANSO | **2nd Type** | TRAILER |
| **Model** | 8X18 BOAT | **Color** | WHITE |
| **VIN/HIN** | 20842 | **Fuel** | |

https://apps.sd.gov/RV66Renewals/checkvin/checkvin.aspx                    3/25/2015

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 6



## Title Information

| Date | 05/25/2011 | Type | Paper |
| Title # | 111370391 | Status | COMPLETE |
| Title Print Date | 05/25/2011 | Sub Status | |
| Odometer Brand | | Odometer | |
| Number of Owners | 1 | Brand | CLEAR |
| Damage Disc | | | |

## Lien Information

No lien information found.

## Additional VINs

No Additional VINS found.

Back to SDCars.org

**soCARS -- South Dakota Department of Revenue
Division of Motor Vehicles**

TOP                                                                          TOP



**USDA**

**United States Department of Agriculture**

Farm Production And
Conservation

Farm Service
Agency

South Dakota State
FSA Office
200 4th St. SW
Huron, SD  57350

Voice  605-352-1160

CERTIFIED MAIL

February 28, 2018

GTR Farm & Ranch
Attn:  Greg Roggenthen

███████████

**NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT**

Dear Mr. Roggenthen,

PLEASE NOTE that the entire indebtedness due on the promissory note which evidences the loan received by you from the United States of America, acting through the Farm Service Agency, United States Department of Agriculture is now declared immediately due and payable and described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note 44-02 | April 6, 2015 | $155,000.00 |
| Promissory Note 44-04 | March 25, 2016 | $170,000.00 |

The promissory notes are secured by security agreements and financing statements described and perfected as follows:

| Security Instrument | Date Recorded | Recording Office | Recording Information |
|---|---|---|---|
| UCC/EFS Filing | April 6, 2015 | SD Secretary of State | 20150961670167 |
| Security Agreement | Dated 3/25/2016 along with previous security agreements | | |

This demand for payment of your indebtedness is made in accordance with the authority granted in the above-described instruments.

The reason for the demand for payment of your indebtedness is as follows:

1. You have failed to pay installments of principal and interest as scheduled in your promissory note
2. Failure to account for dishonored check submitted to FSA on 6/16/17 in the amount of $25,264.58 and accounting of all 2017 crop.

The indebtedness due is $265,795.50 unpaid principal, and $8,537.22 unpaid interest, as of 2/28/18, plus additional interest accruing at the rate of $17.2949 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances.  Unless full payment of your indebtedness is received by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

An Equal Opportunity Provider and Employer

    

ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 7

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

(A)  CASH

Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ or mailed to FSA at ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice.  If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

(B)  TRANSFER AND ASSUMPTION

You may transfer the collateral for your loans to someone who is willing and able to assume the debt.  Contact FSA immediately if you are interested in this.

(C)  SALE

You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien.  Contact FSA immediately if you are interested in this.

(D) VOLUNTARY CONVEYANCE

You may convey all of your collateral to the Government.  Contact FSA immediately if you are interested in this.

If you have not been advised of your rights to request deferral of payments or other servicing options you should contact FSA at the above mentioned address within 15 days of the receipt of this notice.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.
YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE YOUR FSA DEBTS.

UNITED STATES OF AMERICA

By _____
Paul Shubeck
State Executive Director
Farm Service Agency
United States Department of Agriculture

cc:  Spink County FSA, FLP
     John Anderson, District Director, FSA
     An Equal Opportunity Provider and Employer

Notice to Customers Presenting Checks

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.  For inquiries, please contact your local office.

Privacy Act – A privacy Act Statement required by 5 U.S.C. 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internal site at (http://www.fms.treas.gov/otcnet/index.html), or call toll free at (1-866-945-7920) to obtain a copy by mail. Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method.




ROGGENTHEN/GTR FARM & RANCH, LLC EXHIBIT 7

This form is available electronically.

| | |
|---|---|
| **FSA-433**<br>(07-19-04) | **U.S. DEPARTMENT OF AGRICULTURE**<br>Farm Service Agency |

## CERTIFICATE OF INDEBTEDNESS

| 1A. Debtor Name(s) | 1B. Debtor Addresses(s) |
|---|---|
| GTR Farm & Ranch LLC | ████████ |

2. Total debt due United States as of: _____07/26/2019_____   (3) $ ___283,379.92___
                                       Date (MM-DD-YYYY)

I certify that Farm Service Agency (FSA) records show that the debtor(s) named above is/are indebted to the United States in the amount stated above, plus additional interest on the principal balance of (4) $ _265,966.26_ from (5) _07/26/2019_ at the annual rate of (6) _2.375_ percent. Interest accrues on the principal amount of this debt at the rate of (7) $ _17.3060_ per day.

The claim arose in connection with (8) loans made by the United States Department of Agriculture, acting through Farm Service Agency for the purchase of machinery & equipment and annual operating expenses.

9. [Statement of the relevant facts, including: How the debtor(s) became indebted to the United States, the date of the debtor(s) defaulted on the loan, note, or obligation; principal balance of the debt; amount and rate of accrued interest on principal balance; additional charges, if any; date of last **voluntary** payment; and statutory authorities.]

Loan 44-02 for $155,000 was closed on 4/6/15-the payment of $24,300 due 3/1/17 and 3/1/18 have not been paid. Loan 44-04 for $170,000 was closed 3/25/16-this loan was all due in full on 3/1/17. In addition there are two loans, 44-98 & 44-99, that have been established as protective advances for SOS certified lien search and title opinion. The last voluntary payment on 44-02 was on 11/2/15 for $24,300 and on 44-04 it was on 10/2/17 for $4,813.15. Borrower received all servicing notices but did not respond. This account was accelerated on 2/28/18 & sent to OGC on 7/3/18 for foreclosure. Please see additional sheet for breakdown of Principal, Interest and Daily accrual on each note.

**CERTIFICATION:** Pursuant to 28 USC Section 1746, I certify under penalty of perjury that the foregoing is true and correct.

_____07/26/2019_____                     _Mary B Held_      Digitally signed by MARY HELD
10. Date (MM-DD-YYYY)                                            Date: 2019.07.26 12:29:31
                                                                -05'00'
                                             11. (Signature)

                                             Farm Loan Specialist
                                             12. (Title)

                                             Brookings, SD
                                             13. (City, State)

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its program and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information ( Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of Discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, SW., Washington, DC 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.

Total Payoff                                                                 Page 1 of 1

| Customer: | GTR FARM & RANCH LLC | Case #: | 47-058-*****4208 | |
|---|---|---|---|---|

**Total Payoff**

Customer Name : GTR FARM & RANCH LLC
Case Number    : 47-058-*****4208
Accrual Date   : 07/26/2019

The Total displays the sum of the selected loans.

**Payoff Summary**

| Fund Code / Loan # | Date of Loan | Principal Balance | Total Interest | Daily Int. Accrual | Total Payoff |
|---|---|---|---|---|---|
| 4420-02 | 04/06/2015 | $132,361.09 | $11,661.77 | $8.6125 | $144,022.86 |
| | Date of Last Cash Payment: 11/02/2015 | | | | |
| | Principal Amounts | | Unpaid Principal: | | $132,361.09 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $11,661.77 |
| | | | Accrued Interest Advance: | | $0.00 |
| 4420-04 | 03/25/2016 | $133,435.41 | $5,747.78 | $8.6824 | $139,183.19 |
| | Date of Last Cash Payment: 10/02/2017 | | | | |
| | Principal Amounts | | Unpaid Principal: | | $133,435.41 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $5,747.78 |
| | | | Accrued Interest Advance: | | $0.00 |
| 4440-98 | 08/14/2018 | $10.00 | $0.22 | $0.0007 | $10.22 |
| | Date of Last Cash Payment: | | | | |
| | Principal Amounts | | Unpaid Principal: | | $10.00 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $0.22 |
| | | | Accrued Interest Advance: | | $0.00 |
| 4440-99 | 07/17/2018 | $159.76 | $3.89 | $0.0104 | $163.65 |
| | Date of Last Cash Payment: | | | | |
| | Principal Amounts | | Unpaid Principal: | | $159.76 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $3.89 |
| | | | Accrued Interest Advance: | | $0.00 |
| Total | | $265,966.26 | $17,413.66 | $17.3060 | $283,379.92 |
| | Principal Amounts | | Unpaid Principal: | | $265,966.26 |
| | | | Unpaid Principal Advance: | | $0.00 |
| | Interest Amounts | | Accrued Interest: | | $17,413.66 |
| | | | Accrued Interest Advance: | | $0.00 |

This form is available electronically.

| FSA-433 | U.S. DEPARTMENT OF AGRICULTURE |
| (07-19-04) | Farm Service Agency |

## CERTIFICATE OF INDEBTEDNESS

| 1A. Debtor Name(s) | 1B. Debtor Addresses(s) |
|---|---|
| GTR Farm & Ranch LLC | ████████████ |

2. Total debt due United States as of: _____07/26/2019_____   (3) $ __72,415.25__
Date (MM-DD-YYYY)

I certify that Farm Service Agency (FSA) records show that the debtor(s) named above is/are indebted to the United States in the amount stated above, plus additional interest on the principal balance of (4) $ __69,024.25__ from (5) __07/26/2019__ at the annual rate of (6) __2.00__ percent. Interest accrues on the principal amount of this debt at the rate of (7) $ __3.7821__ per day.

The claim arose in connection with (8) loans made by the United States Department of Agriculture, acting through Farm Service Agency for construction of a 55,000 bu. grain bin and all related equipment

9. [Statement of the relevant facts, including: How the debtor(s) became indebted to the United States, the date of the debtor(s) defaulted on the loan, note, or obligation; principal balance of the debt; amount and rate of accrued interest on principal balance; additional charges, if any; date of last **voluntary** payment; and statutory authorities.]

Loan 2015/00016 for $80,000 was closed on 11/30/2015 with annual payments of $12,360.96 due each November 30th starting 11/30/16. The first payment was made on 10/13/16, however the 2017 and 2018 payments have not been made. There was a small payment of $459.23 applied on 2/19/2019. Borrower received all servicing notices in accordance with 1-FSFL, Par. 264A, but did not respond. The case was referred to OGC on 10/3/2018.

**CERTIFICATION:** Pursuant to 28 USC Section 1746, I certify under penalty of perjury that the foregoing is true and correct.

_____07/29/2019_____
10. Date (MM-DD-YYYY)

*Mary Held*   Digitally signed by MARY HELD
Date: 2019.07.29 14:06:55 -05'00'

_____
11. (Signature)

Farm Loan Specialist
12. (Title)

Brookings, SD
13. (City, State)

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its program and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information ( Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of Discrimination, write to USDA, Director, Office of Civil Rights, 1400 Independence Avenue, SW., Washington, DC 20250-9410, or call (800) 795-3272 (voice) or (202) 720-6382 (TDD). USDA is an equal opportunity provider and employer.

FSA - Farm Loan Programs - Routine Servicing                                    Page 1 of 1



**USDA** United States Department of Agriculture
FSA – Farm Loan Programs – Routine Servicing

| DLS Home | About DLS ▶ | Other FSA ▼ | Help | Contact Us | Logout of eAuth | |
|---|---|---|---|---|---|---|
| DLS Admin ▼ | Select Customer ▼ | | LS-Dashboard | Transaction Manager | Acquisitions | Reports |
| Customer: | GTR FARM & RANCH LLC | Case #: | 47-058 | | | |

| Customer Management |
|---|
| Loan Making |
| LS - Transfer/Assumption |
| LS - Dashboard |
| FSFL Loan Servicing |
| Select Facility Loan Special Servicing |
| Transactions |
| NATS |

Printer Friendly

## FSFL Loan Inquiry

**Summary    History**

### Loan Information

Loan Number: 2015/00016
FSA State: South Dakota (46)
FSA County: Spink (115)

Loan Amount: $80,000.00
Loan Term: 7
Interest Rate: 2.000%

### Installment Status

Current Amount Due: $24,262.69
Daily Interest Accrual: $3.782151
Payment Status: $24,262.69  Behind

Next Installment Date: 11/30/2019
Next Installment Amount: $12,360.96
Next Installment Total Due: $36,623.65

### Loan Payoff as of Accrual Date

Accrual Date: 07/26/2019

Outstanding Loan Principal: $69,024.25
Outstanding Loan Interest: $3,391.00
Total Outstanding Loan Amount: $72,415.25

Cancel

Build Version:DLS-RoutineServicing-web-2.4.10 Build Date:(2018-07-23 19:10:35)
Home | FSA Internet | FSA Intranet | USDA.gov |
Site Map | Policies and Links | FOIA | Accessibility Statement | Privacy | Non-Discrimination | Information Quality | USA.gov | White House